AO 106 (Rev. 01/09) Application for a Search Warrant

# United States District Court
### for the
### Western District of New York

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address.)*

**Cellular telephone facility assigned number 716-990-2686, bearing IMSI 310150720590647, subscribed to by James Seright, 2736 21ˢᵗ Street, Niagara Falls, NY 14305 and utilized by Jake Seright**

Case No. 19-mj-1027

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Cellular telephone facility assigned number 716-990-2686, bearing IMSI 310150720590647, subscribed to by James Seright, 2736 21ˢᵗ Street, Niagara Falls, NY 14305 and utilized by Jake Seright.

The precise location data concerning the mobile telephone facility named above for the earlier of a period of thirty (30) days starting within fourteen (14) calendar days of the date of the order, during any time of day.

The basis for search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of 21 U.S.C. Sections 841(a)(1) and 846.

The application is based on these facts:

- ☒ continued on the attached sheet.
- ☒ Delayed notice of ____ days (give exact ending date if more than 30 days: __June 30, 2019__) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

DAVID P. LEARY
Special Agent
Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  March 2,  , 2019

*Judge's signature*

HONORABLE JEREMIAH J. McCARTHY
UNITED STATES MAGISTRATE JUDGE
*Printed name and Title*

City and state:  Buffalo, New York

## AFFIDAVIT IN SUPPORT OF APPLICATION

STATE OF NEW YORK   )
COUNTY OF ERIE         )      SS:
CITY OF BUFFALO       )

**DAVID P. LEARY**, Special Agent with the U.S. Drug Enforcement Administration (DEA), Department of Justice, having been duly sworn, states as follows:

## INTRODUCTION

1.      I am a Special Agent (SA) with the Drug Enforcement Administration (DEA), Buffalo Resident Office, where I investigate narcotics trafficking, and, as such, I am an "investigative or law enforcement officer" of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in the Comprehensive Drug Abuse Prevention and Controlled Substance Act of 1970, Title 21 of the United States Code, as amended.   I have been employed as a SA with the DEA since February 2009, and have participated in numerous investigations concerning the distribution of narcotics drug proceeds.

2.      I received training, both academic and practical application, in the areas of informant handling/debriefing, drug packaging, pricing, importation, and trafficking methods.   In addition, I received both academic and practical application training in surveillance and counter surveillance techniques/methods.   I have received legal instruction in federal drug conspiracy laws, preparing drug affidavits, the Controlled Substances Act,

Fourth Amendment Searches and Seizures, Federal Rules of Evidence, and the execution of search warrants. Based on my training, experience, and conversations with other Special Agents and Task Force Officers of the DEA, I am familiar with how controlled substances are cultivated, manufactured, processed, packaged, distributed, sold, and used within the framework of a drug trafficking organization.

3. I have supervised, led, conducted, and assisted with complex criminal, multi-jurisdictional investigations targeting the importation, exportation, smuggling, transporting, trafficking, and distribution of controlled substances (conducted by Drug Trafficking Organizations or DTOs). I am familiar with how controlled substances are produced, packaged, smuggled, transported, distributed, and used within the framework of drug distribution operations conducted by DTOs and how drug traffickers and DTOs utilize wire communications to facilitate their illegal activities. I have also supervised, conducted and assisted with investigations utilizing judicially authorized intercepts of communication devices, "wiretaps," and have reviewed recorded conversations and drug records/ledgers pertaining to narcotics trafficking. I have also conducted and participated in numerous debriefings of narcotic traffickers, confidential informants, cooperating defendants, cooperating individuals, and sources of information.

4. The information contained in this Affidavit is based upon your Affiant's personal knowledge, upon reports and information received from other law enforcement officers and agencies, and other law enforcement activities.

5.     As a result of working on this case with other Special Agents and Task Force Officers of the DEA, the New York State Attorney General's Organized Crime Task Force (NYSAG OCTF), the Niagara Falls New York Police Department and other law enforcement agencies, I am familiar with the circumstances of the offenses described in this Affidavit. This affidavit is being submitted or a limited purpose, that is, a probable cause determination, therefore I have not presented all of the facts of this investigation to date.  I have set forth only the information I believe to be necessary to establish probable cause to acquire precision data location of telephone number **716-990-2686**.

6.     I submit this affidavit in support of an application for an order pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 2703(c)(1)(A), directing **Cricket Wireless and/or AT&T,** [1] a wireless communication provider, to assist agents of the DEA by providing all information, facilities and technical assistance needed to ascertain the physical location of the cellular telephone assigned call number **716-990-2686**, which is a device serviced by **Cricket Wireless and/or AT&T,** bearing International Mobile Subscriber Identity (IMSI) number **310150720590647,** subscribed to by **JAMES SERIGHT** with an address listed on the account as 2736 21st Street, Niagara Falls, NY 14305 (hereinafter referred to as the "Target Telephone"), including but not limited to data indicating the specific latitude and longitude of (or other precise location information concerning) the target telephone (collectively referred to as the "Requested

---

1.  According to information received pursuant to an administrative subpoena served upon AT&T as a parent corporation of Cricket Wireless, target telephone number: **716-990-2686** is "[p]ossibly a former Legacy Cricket subscriber."   See Exhibit 1.

Information"),[2] for a period of thirty (30) days.   The aforementioned account was activated on or about December 15, 2016 and was still currently active as of January 15, 2019.

7.      As set forth in this affidavit, probable cause exists to believe that the requested information will lead to evidence of offenses involving violations of Title 21, United States Code, Sections 841(a)(1) and 846, possession with intent to distribute and conspiracy to distribute cocaine, heroin, and fentanyl, (collectively, the Target Offenses), being committed by **JAKE SERIGHT**, as well as the identification of other individuals who are engaged in the commission of these offenses.

## PRIOR AUTHORIZATIONS

8.      On October 31, 2018, the Honorable Jeremiah J. McCarthy issued a search warrant and order authorizing the collection of precise location data for **716-990-2686** (the Target Telephone) for a period of 30 days, which expired on November 30, 2018 (18-mj-1209). On November 1, 2018, the Honorable Jeremiah J. McCarthy issued an order authorizing the installation and use of a pen register and trap and trace device for **716-990-2686** (the Target Telephone) for a period of 60 days (18-MR-364).

---

[2] Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the Target Telephone at the start and end of any call.   In requesting cell site information, the government does not concede that such cell site records – routinely retained by wireless carriers as business records – may only be obtained via a warrant issued on probable cause.   See In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. §§ 2703(d) and 3121, et seq.).

9.     On November 28, 2018, the Honorable H. Kenneth Schroeder, Jr. issued a search warrant and order authorizing the collection of precise location data for **716-990-2686** (the Target Telephone) for a period of 30 days (18-MJ-217). After serving said search warrant and order on AT&T, the DEA was informed by AT&T that the IMSI associated with the Target Telephone in the search warrant and order was recently changed and that as a result AT&T would not supply the precise location data sought by investigators. Accordingly, investigators subpoenaed the new IMSI associated with the Target Telephone and learned it was changed from 310150709156801 to 310150720590647.  On December 13, 2018, the Honorable Michael J. Roemer issued a search warrant and order authorizing the collection of precise location data for **716-990-2686** (the Target Telephone) for a period of 30 days (18-MJ-5268).

10.     On December 21, 2018, the Honorable Jeremiah J. McCarthy issued an order authorizing the installation and use of a pen register and trap and trace device for **716-990-2686** (the Target Telephone) for a period of 60 days (18-MR-400).

11.     On January 17, 2019, the Honorable Jeremiah J. McCarthy issued a search warrant and order authorizing the collection of precise location data for the Target Telephone for a period of 30 days (19-MJ-27).

12.     On February 6, 2019, the Honorable William M. Skretny, United States District Court Judge, Western District of New York, issued an order authorizing the interception of a wire and electronic communications over the Target Telephone (19-MR-25).

## BACKGROUND OF THE INVESTIGATION

13.     DEA and other Law Enforcement have been conducting an investigation into the drug trafficking activities of an interstate DTO operating between New York, California, Michigan, and Georgia.   This investigation revealed that the organization is moving bulk quantities of cocaine, heroin, and fentanyl to the Western New York area.   **JAKE SERIGHT** is a member of this DTO and works as a multi-kilogram distributor on behalf of this organization.

## PROBABLE CAUSE

14.     On October 2, 2018, DEA SA David Leary, your Affiant and others met with DEA a confidential source (CS) to discuss the drug trafficking activities of, *inter alia*, **JAKE SERIGHT**.   The CS advised that, based upon recent conversations with **SERIGHT**, the CS can purchase both cocaine and heroin from **SERIGHT**.   **SERIGHT** stated that he would sell the CS one ounce of heroin for $1900.   Furthermore, the CS stated that **SERIGHT** purchased 2 kilograms of heroin for $90,000 from a source of supply in Detroit, Michigan approximately 2 months ago.   The CS believed that the Detroit source of supply was possibly **SERIGHT's** cousin.   The CS then advised that **SERIGHT** usually purchased his cocaine from a second source of supply, who possibly resided in California.   **SERIGHT** also purchased cocaine from a third source of supply, **JERMAINE TRAYLOR,** who resides in Atlanta, GA. Recently **TRAYLOR** was selling kilograms of cocaine for $56,000.00 per kilogram.

15.     On that same date, the CS stated that **SERIGHT** drove a burgundy Ford F-150 pickup truck and that **SERIGHT** was currently living at 1118 13th Street, Niagara Falls, NY, which **SERIGHT** recently purchased. The CS also advised **SERIGHT** utilized cellular telephone number **716-990-2686** and does not often change his number. An administrative subpoena was subsequently sent to **AT&T** for that telephone number requesting toll and subscriber data.[3]

16.     Finally, the CS stated that **SERIGHT** is a "daytime" guy, meaning that **SERIGHT** only conducts retail-level narcotics transactions during the daytime. The CS believed that SERIGHT might store his narcotics at his brother's residence. That brother was identified as **JULIAN SERIGHT**, who resides at 2716 21st, Niagara Falls, NY. The CS also believed that **SERIGHT** might store his narcotics proceeds with his mother, **IDA SERIGHT**, where she resides at 2736 21st, Niagara Falls, NY.[4]

17.     The DEA has conducted a series of controlled purchases of narcotics from **SERIGHT**. Each of the transactions were arranged over the Target Telephone. Before each controlled purchase, the CS was searched for contraband with negative results and equipped with recording devices. Law Enforcement established surveillance before, during and after each transaction. After each transaction, the CS turned over a quantity of narcotics, which the CS confirmed was provided by **SERIGHT**.

---

3 AT&T responded to the administrative subpoena sent as Cricket Wireless's parent organization. The information gleaned from the service of the DEA administrative subpoena was included *supra*.

4 It should be noted that **IDA SERIGHT'S** address, 2736 21st Street, Niagara Falls, NY was the same address listed on the AT&T subscriber information for the Target Telephone.

**October 15, 2018 Controlled Purchase of Fentanyl from SERIGHT**

18.    On October 15, 2018, at approximately 4:50 pm, members of the DEA Buffalo Resident Office, Niagara Falls Police Department (NFPD), and the New York State Attorney General's Organized Crime Task Force (OCTF) met with the CS to finalize plans to purchase one ounce of heroin for $1,900 U.S. currency from **SERIGHT**. The CS and **SERIGHT** previously established the date and time of the drug transaction via text messages over **SERIGHT'S** telephone number **716-990-2686** (the Target Telephone).

19.    At approximately 5:33 pm, TFA Chris Kozell observed the CS arrive at the predetermined meet location, park their vehicle, and enter the building. At approximately 5:36 pm, **SERIGHT** texted the CS using the Target Telephone and advised that he was on his way. At approximately 5:45 pm, NFPD Det. Joseph Palermo observed **SERIGHT** exit 2645 North Avenue in Niagara Falls, NY and enter a 2015 black Toyota Camry sedan bearing NY registration (HEN8507). That vehicle was registered to Deasia Ziare Mays at 9021 Zito Drive, Apartment 40, Niagara Falls, NY 14304. Mays is believed to be the stepdaughter of **SERIGHT**. At approximately 5:58 pm, TFA Kozell observed the aforementioned Toyota Camry pull up to and park in front of the same predetermined meet location. A black male wearing a black hoodie exited the Camry and entered the building via the front door. Inside, SA Leary was able to hear the conversation between the CS and **SERIGHT** during the drug transaction. The conversation between the CS and **SERIGHT** was audio and video recorded.

20.     **SERIGHT** departed the pre-determined meet location at approximately 6:04 p.m. in the Toyota Camry and the CS exited the aforementioned location approximately one minute later. The CS was followed to another neutral location where SA Leary and SA Wisniewski debriefed the CS. The CS stated that **SERIGHT** engaged in a transaction with the CS wherein the CS handed **SERIGHT** the $1900 U.S. currency in exchange for a quantity of suspected controlled substance. The CS stated that the CS was $60 short on the payment but that **SERIGHT** would accept payment of the debt during a future drug transaction. Further, the CS described their discussion about the quality of the heroin. **SERIGHT** advised the CS to add a cutting agent to the heroin and assured that customers would still be happy with the product. **SERIGHT** stated he only had one other customer for the heroin and that he makes approximately $10,000 per kilogram of heroin. **SERIGHT** and the CS agreed to meet again soon. The CS believed that **SERIGHT** still had a good amount of the 2 kilograms of heroin he had recently obtained available for purchase. The CS stated that the CS believes **SERIGHT** obtained the suspected heroin and/or fentanyl from a family member in Detroit, Michigan.

21.     During the debriefing, investigators retrieved the suspected controlled substance purchased by the CS, as well as the technical recording equipment. The suspected controlled substance was submitted to the DEA's Northeast Laboratory for rush analysis where it was confirmed that said substance weighed 27.984 grams without packaging and contained fentanyl.

**November 8, 2018 Controlled Purchase of Suspected Fentanyl from SERIGHT**

22.      On November 8, 2018, Jake **SERIGHT** sold a quantity of fentanyl to the CS in exchange for $2,020 U.S. currency.   At approximately 1:55 p.m. members of the DEA, NFPD and the OCTF met with the CS to finalize plans to purchase heroin (suspected fentanyl) from **SERIGHT**.[5]   The CS and **SERIGHT** previously established the date and time of the drug transaction via recorded telephone conversation(s) with **SERIGHT** utilizing telephone number **716-990-2686** (the Target Telephone).   Those telephone calls were downloaded by SA Dave Leary, as witnessed by SA Christopher Wisniewski, and submitted into evidence.

23.      The CS arrived at 1553 Pierce Avenue, Niagara Falls, NY, parked the CS vehicle and entered the building at approximately 2:30 pm.   At approximately 2:32 pm, SA Leary advised that he observed **SERIGHT** operating a red pick-up truck in the vicinity of 18th Street and Pierce Avenue in Niagara Falls.   SA Leary could see that **SERIGHT** had at least one passenger with him.   Specifically, **SERIGHT'S** vehicle was a 2010 red Ford F-150 bearing NY registration (JAN2743) and was registered to Deasia Ziare MAYS at 9021 Zito Drive, Apartment 40, Niagara Falls, NY 14304.   At approximately 2:34 pm, a CBP/AMP Aerial Surveillance Unit (herein "ASU"), advised that **SERIGHT** was wearing a white or light grey jacket, white or light grey pants and a white or light grey hat.

---

5.  During a past transaction on October 15, 2018 for approximately one ounce of heroin, described *supra*, the CS was short on funds and owed SERIGHT $60.  That debt was paid during the instant transaction.

24.     At approximately 2:59 pm, the ASU observed **SERIGHT** drive from the vicinity of 18th and Willow to the vicinity of 1553 Pierce Avenue. **SERIGHT** made a U-turn, pulled up, parked and rolled up his window. **SERIGHT** entered the building at approximately 3:00 pm, per the ASU.   Inside, SA Leary was able to hear the conversation between the CS and **SERIGHT** during the drug transaction.  The conversation between the CS and **SERIGHT** was recorded on audio and video medium and submitted into evidence as well.  At approximately 3:03 pm, SA Leary reported that **SERIGHT** would travel to obtain the fentanyl in the area of the Target store in Niagara Falls, NY and return to the meet location with the contraband.

25.     After approximately 13 minutes of furtive driving, **SERIGHT** followed a circuitous route through Niagara Falls, NY until he arrived at 9021 Zito Drive in Niagara Falls, NY at approximately 3:34 pm.  **SERIGHT** parked his truck in front of the front door and went inside of the apartment building, as observed by the ASU.[6] **SERIGHT** exited the aforementioned apartment building at approximately 3:42 pm and traveled via a circuitous route back to the vicinity of 1553 Pierce Avenue, followed by the ASU.[7]

26.     **SERIGHT** arrived at 1553 Pierce Avenue at approximately 3:59 pm, parked, and exited his truck.  **SERIGHT** entered the meet location at approximately 4:00 pm to meet with the CS. During the meeting, **SERIGHT** sold the CS approximately one ounce of

---

6.     According to OCTF Inv. Fornier, **SERIGHT'S** daughter, Deasia Ziare MAYS, resided at 9021 Zito Drive, Apartment 40, Niagara Falls, NY.
7.     The CS remained at that location under surveillance while **SERIGHT** traveled to Zito Avenue.

suspected fentanyl in exchange for $2020 U.S. currency and supplied a second ounce of suspected fentanyl to the CS on credit.   The transaction was recorded on an audio and video.

27.     The CS then departed the area and turned over the suspected fentanyl to law enforcement.   The suspected fentanyl was submitted for analysis to the DEA Northeast Laboratory.   The DEA Northeast Regional Laboratory analyzed the substance purchased from JAKE SERIGHT on November 23, 2018 and concluded the suspected heroin contained 56.1 grams of fentanyl and tramadol. Analysis confirmed no heroin was present in the substance.

28.     Thereafter, **SERIGHT** remained in the vicinity of 1553 Pierce Avenue.  He met with multiple subjects who arrived in various vehicles.   The operation was terminated at approximately 4:44 pm after it appeared that **SERIGHT** would not depart any time soon.

**December 19, 2018 Controlled Purchase of Suspected Fentanyl from SERIGHT**

29.     On December 19, 2018, Jake **SERIGHT** sold a quantity of fentanyl to the CS in exchange for $2,920.00 U.S. currency.   During a meeting earlier that day, **SERIGHT** agreed to sell a quantity of heroin to the CS.   During a recorded consensual phone call over the Target Telephone, **SERIGHT** agreed to meet the CS in 40 minutes.

30.     Before the narcotics transaction, **JAKE SERIGHT** first traveled to the suspected stash location, an apartment complex at 9021 Zito Drive, Niagara Falls, NY, and then met the CS at a predetermined meet location with the narcotics.   The vehicle operated by **SERIGHT** was registered to Deasia Mays of 9021 Zito Drive, Apt. 40, Niagara Falls,

NY.  During the transaction, the CS provided SERIGHT with $1960.00 of DEA Funds as the second and final payment for the controlled purchase conducted on November 8, 2018. The CS then purchased approximately 2 ounces of suspected heroin from SERIGHT for an additional $2,920.00 of DEA Funds.   The transaction was recorded on audio and video.

31.   Immediately following the controlled purchase, agents and investigators surveilled SERIGHT leave the meet location, meet with an individual and travel to an unknown residence on 10th Street in the city of Niagara Falls, NY.  Surveillance was terminated at that time.

## February 13, 2019 Controlled Purchase of Cocaine from SERIGHT

32.   On February 13, 2019, Jake SERIGHT sold a quantity of cocaine to the CS in exchange for $2,750.00 U.S. Currency.   Earlier that day, SERIGHT and the CS arranged a meeting through text messages over the Target Telephone.   During the meeting, SERIGHT agreed to sell a specific quantity of cocaine to the CS for $2,750.00.   SERIGHT then returned to his residence.   Approximately 40 minutes later, SERIGHT and the CS arranged a second meeting through text messages over the Target Telephone to exchange the cocaine for cash. Law Enforcement conducted surveillance on SERIGHT before and during both meetings.

33.   During the transaction, the CS provided SERIGHT with $2,750.00 of DEA Funds and SERIGHT provided the CS with approximately 62 grams of cocaine.  SERIGHT indicated to the CS that SERIGHT had additional quantities of cocaine on his person.   The transaction was recorded on audio and video.

## Wire Intercept of Target Telephone

34.     On February 6, 2019, Agents received authorization for the interception of wire and electronic communications over the Target Telephone for a period of 30 days (19-MR-25).  The first interception took place in February 7, 2019 and monitoring terminated at the expiration of the order's authorization on March 8, 2019.

35.     During the course of the wire intercept of the Target Telephone, Agents were able to identify **SERIGHT's** customer base throughout Niagara Falls, NY, 1 of 2 stash locations, and a possible source of supply for cocaine.   Agents believe Baron HALL is the source of supply of cocaine for **SERIGHT**.   Through the use of mobile surveillance, Confidential Source information, intercepted communications and Ping, agents observed several meets with the HALL, at which Agents believe **SERIGHT** purchased several kilograms of cocaine.

36.     The government has sought and obtained approval to renew the interception of wire and electronic communications over the Target Telephone from the Office of Enforcement Operations of the Criminal Division. The government anticipates the issuance of the Court's Order on March 20, 2019. Accordingly, investigators continue to investigate the criminal organization and are attempting to identify the second unknown stash location, collect evidence that may be used in court to prosecute **SERIGHT**, **HALL**, and their co-conspirators, and identify HALL's source of supply.

14

## AUTHORIZATION REQUEST

37.     Based on the foregoing, there is probable cause to believe that the Target Telephone was used, is currently being used, and will continue to be used by **JAKE SERIGHT** to commit and facilitate narcotics crimes, specifically the Target Offenses, in the Western District of New York (WDNY) and elsewhere.  There is also probable cause to believe the requested information will lead to information necessary to determine the approximate locations of Target Telephone so that **SERIGHT** may be charged and will assist in identifying possible co-conspirators, stash locations for the DTO's controlled substances and/or proceeds, and serve as corroborative evidence of **SERIGHT's** drug trafficking and criminal associations with co-conspirators.


38.     I respectfully request an order for disclosure of location-based services for a period of thirty days for **Cricket Wireless and/or AT&T** telephone number **716-990-2686** (the Target Telephone).  I believe that monitoring the transmissions from the Target Telephone will provide investigating agents the ability to effectively conduct surveillance and to identify the user(s) of the Target Telephone and to identify other conspirators, without compromising the ongoing investigation.  Such an order would (1) operate at any time of the day or night as required; (2) would be expressly limited to transmissions needed to ascertain the physical location of the Target Telephone; and (3) would expressly exclude any voice communications transmitted from the Target Telephone.

39.     **WHEREFORE**, pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 2703(c)(1)(A), it is requested that the Court issue a Warrant and Order authorizing the acquisition of the requested information and directing **Cricket**

**Wireless and/or AT&T**, the service provider for the Target Telephone, to initiate a signal to determine the location of the Target Telephone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user of the Target Telephone, for a period of thirty (30) days.   Reasonable expenses incurred pursuant to this activity will be processed for payment by DEA.

**IT IS FURTHER REQUESTED**, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until June 30, 2019.   There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.   Providing immediate notice to the subscriber or user of the Target Telephone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.   See 18 U.S.C. § 3103a(b)(1).   Notification could especially damage the investigation into the source of supply who could become suspicious of individuals with whom they work to arrange their narcotics distribution activities, which in turn could lead them to become more secretive. As such, these risks justify the requested delayed notification for the additional time described above.   See 18 U.S.C. § 3103a(b)(3).   The proposed search warrant does not authorize the seizure of any tangible property.   See 18 U.S.C. § 3103a(b)(2).

16

**IT IS FURTHER REQUESTED** that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Telephone outside of daytime hours.

**REQUEST TO SEAL**

**IT IS FURTHER REQUESTED** that the warrant and this affirmation, as it reveals an ongoing investigation and sealed indictments, be sealed until June 30, 2019 unless otherwise ordered by the Court, in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others, except that working copies should be made available to the United States Attorney's Office, DEA, and any other law enforcement agency designated by the United States Attorney's Office.

DAVID P. LEARY
Special Agent
Drug Enforcement Administration

Sworn to before me

this ___ day of March 2019

HONORABLE JEREMIAH J. McCARTHY
United States Magistrate Judge

```
A40598375
                                                              CRICKET
12/11/2018
                           WIRELESS
                     SUBSCRIBER INFORMATION
------------------------------------------------------------------
335343300


------------------------------------------------------------------
FINANCIAL LIABLE PARTY

Name: JAMES SERIGHT
Credit Address: 2736 21ST ST, NIAGARA FALLS,NY 14305

Activation Date: 12/15/2016

Contact Name: JAMES SERIGHT
Contact Home Phone:                  Contact Work Phone:


------------------------------------------------------------------
BILLING PARTY

Account Number: 335343300
Name: JAMES SERIGHT
Billing Address: 2736 21ST ST, NIAGARA FALLS,NY 14305
Account Status: OPEN                 Billing Cycle: 15


------------------------------------------------------------------
USER INFORMATION

MSISDN: (716) 990-2686            IMSI: 310150720590647
MSISDN Active: 12/15/2016 - Current
MSISDN Status: Active
Name: JAMES SERIGHT
User Address: 2736 21ST ST , NIAGARA FALLS, NY 14305
Service Start Date: 12/15/2016     Dealer Info: 70034101
Payment Type: Prepaid
Contact Name: JAMES SERIGHT
Contact Home Phone:                Contact Work Phone:
Migration Ind: N                   Migration Date:



------------------------------------------------------------------
LDS
```

CRICKET PROPRIETARY
The information contained here is for use by authorized person only and
is not for general distribution.